UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BUI-FORD, WILLIAM WALKER, AFZAL DAMJI, CHANRITHY MEAS, SUN CAO, ROGER SCULLION, EDWARD RUMANN, JAMIE SCHAEFER, THEODORE SMITH, ALLYSON BOMHOF, VICTOR MANUEL, CHARLES WARD, ANDREW BUCKLIN, and LUCAS BUTLER, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:23-CV-02321<br><br>**ORDER ON MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: ECF No. 31 |

Pending before the Court is Tesla Inc.'s Motion to Dismiss (ECF No. 31) Plaintiffs'[1] First Amended Complaint (ECF No. 23, "FAC"). The Court will grant the motion in part and deny it in part.

I.   **BACKGROUND**

Tesla designs, manufactures, markets, and sells electric vehicles. FAC ¶ 35. As Tesla discloses on its website, "Tesla vehicles regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi." *Id.* ¶ 45. Plaintiffs allege that Tesla

---

[1] Plaintiff Scullion voluntary dismissed all claims. *See* ECF No. 32.

1    knowingly designs these software updates to deplete the battery and reduce the driving range of
2    some Tesla Model S and Model X vehicles by at least 20% without any warning to the customer.
3    *Id.* ¶¶ 2, 57–60.  Although many owners receive a notice on their vehicles' screens or on the Tesla
4    app on their phones asking them to install the update, some owners receive no notice at all.  *Id.*
5    ¶¶ 4, 15, 22, 24, 29, 31, 32, 34.  Instead, the car automatically downloads and installs the update.
6    *Id*.  In many cases, car owners must then pay third parties hundreds of dollars to reverse the
7    software update so that they can continue to experience the battery performance they had before
8    the update.  *Id.* ¶ 2.  In some other cases, the software updates render the batteries inoperable,
9    requiring car owners to purchase a new battery at a cost of up to $15,000.  *Id.*

10   Plaintiffs now bring this action on behalf of themselves and those similarly situated,
11   asserting claims on behalf of a nationwide Class (or in the alternative on behalf of the State Sub-
12   Classes) for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. ("CFAA");
13   California's Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq. ("CDAFA");
14   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and trespass to
15   chattel under California law.  Plaintiffs also bring claims for the common law tort of trespass to
16   chattel under the laws of Arizona, Florida, Illinois, Michigan, Texas, Virginia, and Washington
17   State on behalf of state-specific sub-classes.

18   **II.    LEGAL STANDARD**

19   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the
20   complaint.  Fed. R. Civ. P. 12(b)(6); *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th
21   Cir. 2011).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a
22   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,
23   173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,
24   167 L.Ed.2d 929 (2007).  When deciding whether to grant a motion to dismiss, the court must
25   construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Tr. v. United*
26   *Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must
27   "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion).
28   However, "courts are not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## III.  DISCUSSION[2]

### A.  Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 et seq.

The CFAA is a federal criminal statute that also authorizes civil actions for any person who suffers damage or loss by reason of a violation of the statute. 18 U.S.C. § 1030(g). "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009) (citing 18 U.S.C. 1030(a)(1)–(7) (2004). Plaintiffs allege that Tesla violated Section 1030(a)(4) and Sections 1030(a)(5)(A–C). To establish a violation of Section1030(a)(4), Plaintiff must plead facts to show that Tesla:

> knowingly and with intent to defraud, accesse[d] a protected computer without authorization, or exceed[ed] authorized access, and by means of such conduct further[ed] the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consist[ed] only of the use of the computer and the value of such use [was] not more than $5,000 in any 1-year period[.]

18 U.S.C. § 1030(a)(4). To establish a violation of Section 1030(a)(5), Plaintiffs must allege facts that Tesla:

> (A)  knowingly cause[d] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[d] damage without authorization, to a protected computer;
>
> (B)  intentionally accesse[d] a protected computer without authorization, and as a result of such conduct, recklessly cause[d] damage; or
>
> (C)  intentionally accesse[d] a protected computer without authorization, and as a result of such conduct, cause[d] damage and loss.

18 U.S.C. § 1030(a)(5).

---

[2] Plaintiff Cao fails to allege any specific allegations whatsoever, so the Court dismisses her claims with leave to amend.

3

1. **Section 1030(a)(4)**

Plaintiffs fail to plead that Tesla "obtain[ed] anything of value" "by means of" its alleged unauthorized access. Although Smith, Bomhof, and Bucklin allege that Tesla's software updates required them eventually to purchase new batteries from Tesla, FAC ¶¶ 26–28, 32, they fail to allege that Tesla received something of value from its "access" of the computer. *See Fish v. Tesla*, SACV21060PSGJDEX, 2022 WL 1552137, at *9 (C.D. Cal. May 12, 2022) (plaintiff failed to plead Tesla obtained "anything of value" under Section 1030(a)(4) when Tesla allegedly degraded plaintiff's car batteries through software updates); *see also Calendar Research LLC v. Stubhub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391, at *22–23 (C.D. Cal. May 13, 2020) (plaintiff failed to present any evidence defendant "obtained anything of value" under Section 1030(a)(4) by "backing up" his employee account."). Plaintiffs' claims under this prong fail.

2. **Section 1030(a)(5)(A)**

Section 1030(a)(5)(A) provides liability for "knowingly caus[ing] the transmission of a program, information, code or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer." Tesla does not appear to contest that it "knowingly cause[d] the transmission of a program, information, code, or command" by sending various software updates. The dispute here centers on whether Tesla, as a result of its knowing transmission, "intentionally cause[d] damage without authorization" to Plaintiffs' car batteries. Plaintiffs allege that Tesla knowingly designed updates that "limit[ed] the maximum charge voltage and usable amount of battery capacity which [led] to significant amounts of range loss and loss of performance" in their vehicles immediately after downloading. FAC ¶¶ 10–34, 61, 91. An update called "BMS_u029" often showed that the car's battery was depleted or inoperable. *Id*. ¶¶ 3, 11, 24, 32, 51. Plaintiffs support this contention of intentional design with allegations that Tesla had knowledge that the software updates reduced battery life due to its pre-release and post-release testing, general monitoring of the industry, and comments on publicly available internet forums. *Id*. ¶¶ 56–64. Plaintiffs further support this contention with allegations suggesting that Tesla could profit from the repair or replacement of degraded batteries or new cars altogether. *Id*. ¶¶ 13, 29, 31, 32, 34. Plaintiffs also establish that Tesla sometimes pushes software updates to vehicles

4

without any consent or prompting. *Id.* ¶ 4. When Tesla does prompt users for consent, it nevertheless fails to inform owners that its software updates may impact battery life. *Id.* ¶¶ 10–34.

Tesla argues, among other things, that Plaintiffs fail to plead sufficient information about the specific software updates at issue and the technical mechanism by which these updates caused damage. The Court disagrees; Plaintiffs plausibly explain how various software updates result in immediate battery degradation, itself often signaled by a common error code. While there might be further relevant technical information that is currently in Tesla's exclusive control, and which discovery might reveal, at this stage, "Plaintiff[s] [are] not required to plead the mechanical details of an alleged defect in order to state a claim." *Cholakyan v. Mercedes-Benz USA LLC*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011) ("allegations of an unspecified 'design flaw that caused the windshield in those vehicles to have a high propensity to crack or chip under circumstances that would not cause non-defective windshields to similarly fail'" sufficient to state claim (citing *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 912 (C.D. Cal. 2010)); *see also Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *1 (C.D. Cal. May 4, 2009) (allegation that vehicles had "defective air intake system," which was part of the "climate control system," sufficient to state claim). Plaintiffs in other CFAA cases have succeeded in stating a claim with similar levels of technical specificity at this stage. For example, the court in *Fish v. Tesla, Inc.* held that plaintiffs stated a claim under this subsection when Tesla damaged plaintiffs' car batteries through software updates without permission and caused such damage intentionally. 2022 WL 1552137, at *9 (C.D. Cal. May 12, 2022).[3] The Court finds that all Plaintiffs except

---

[3] In *In re Apple Inc. Device Performance Litig.*, plaintiffs alleged that Apple designed two updates to slow the processing speed of plaintiffs' phones. Despite plaintiffs' voluntary installation of the update, the court found they "never gave permission for Apple to cause damage to their iPhones" because "[n]either the software update notification nor the software update release notes made any mention of [the] severe throttling effect." 347 F. Supp. 3d 434, 451–52 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019). In *In re Apple & AT & TM Antitrust Litig.*, plaintiffs alleged that Apple intended to fully disable iPhones that contained unapproved program unlocks through a software update, and Apple was aware of the potential ramifications of the update prior to release. 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008). The court found that plaintiffs did not authorize this damage to their iPhones given the "ambiguity surrounding" Apple's warning and the fact that Plaintiffs allege that some downloading of the update was "unsuspected." *Id.* In *San Miguel v. HP Inc.*, plaintiffs adequately alleged that HP knowingly transmitted a firmware update that disabled printers using non-HP ink cartridges and intentionally caused such damage without authorization given that plaintiffs did not consent to

5

Cao adequately plead that Tesla knowingly caused a transmission that damaged their car batteries without permission and caused such damage intentionally.

### 3. Section 1030(a)(5)(B) and Section 1030(a)(5)(C)

Unlike subsection (a)(5)(A), subsections (a)(5)(B) and (a)(5)(C) require that Plaintiffs allege that defendant "intentionally accesses a protected computer" "without authorization."[4] Plaintiffs Damji, Rumman, Meas, Schaefer, Bomhof, Manuel, Ward, and Bucklin allege that Tesla pushed the software update to their car's systems without prompting or notice such that they could not have provided consent.[5] FAC ¶¶ 15, 17, 22–25, 27–33. These Plaintiffs adequately plead that Tesla intentionally accessed their computers without authorization.

However, Plaintiffs Bui-Ford, Walker, Smith, and Butler downloaded the software updates voluntarily. *Id.* ¶ 11, 13, 26, 34.[6] These Plaintiffs argue that Tesla nevertheless accessed their computers without authorization because they concealed the true nature of the updates through misleading omissions in statements to consumers. But these allegations do not establish unauthorized conduct under this prong. Although courts do not "foreclose" claims of vitiated consent under these subsections, users who voluntarily installed software "have serious difficulty" pleading unauthorized access under the CFAA, especially given the heightened pleading requirements applied in consumer-protection claims sounding in fraud. *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 452 (N.D. Cal. 2018), citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also In re Sony PS3 Other OS Litig.*, 551 F.

---

installation of the disabling firmware. 317 F.Supp.3d 1075, 1084–86 (N.D. Cal. 2018). *See also Parziale v. HP, Inc.,* 445 F. Supp. 3d 435, 448–50 (N.D. Cal. 2020) (same).

[4] In section (a)(5)(A), "without authorization" modifies "causing damage," but here, "without authorization" modifies "intentional access." *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 451–52 (N.D. Cal. 2018).

[5] The Court notes that the FAC does not make clear whether some Plaintiffs were ever prompted with consent for the updates at issue. For example, Plaintiff Meas alleges that he "did not consent to these updates, and, although he can delay the update, he cannot reject it outright. If he doesn't agree to a specific time, he continues to receive pop-up notifications unless he sets a time for the update." FAC ¶ 17. Drawing all inferences in favor of Plaintiffs, the Court interprets these Plaintiffs' allegations to mean that they were not directly prompted for consent for these updates.

[6] Smith's allegations do not address whether he provided consent, and explain that he "does not have the ability to decline the software updates outright." In the context of the FAC, this allegation appears to imply that the update prompt would continue to appear until he updated the software. *See id.* ¶ 5, 26. As such, the Court does not infer that Tesla pushed the relevant update to Smith without consent, but instead concludes that Smith downloaded the update voluntarily.

App'x 916, 923 (9th Cir. 2014) ("[U]sers who had 'voluntarily installed' software that allegedly caused harm cannot plead unauthorized 'access' under the CFAA."); *In re Apple & AT & TM Antitrust Litig.*, No. 07-CV-05152-JW, 2010 WL 3521965, at *7 (N.D. Cal. July 8, 2010) (noting that "[v]oluntary installation runs counter to . . . [the] CFAA's requirement that the alleged act was 'without authorization'"). Plaintiffs' allegations of misleading omissions do not establish, for example, that Tesla posed as a different entity or misdescribed the nature of the software updates to gain access to Plaintiffs' vehicle systems. *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 452 (declining to find vitiated consent when Apple described update that degraded the phone battery as one that "include[d] bug fixes and improve[d] the security of [the] iPhone" or "include[d] bug fixes and improvements"). Plaintiffs Bui-Ford, Walker, Smith, and Butler therefore fail to plead a claim under subsections (a)(5)(B) and (a)(5)(C).

### 4. CFAA's Loss Requirement

To plead loss under the CFAA, a plaintiff must show a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]" *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 933–35 (9th Cir. 2004). Contrary to Tesla's assertion, Plaintiffs can aggregate such losses under the various software updates alleged, as binding case law in this Circuit makes clear that no "single act" requirement exists in the CFAA:

> The syntax makes it clear that . . . the $5,000 floor applies to how much damage or loss there is to the victim over a one-year period, not from a particular intrusion. Multiple intrusions can cause a single impairment, and multiple corruptions of data can be described as a single "impairment" to the data. The statute does not say that an 'impairment' has to result from a single intrusion, or has to be a single corrupted byte.

*Id.* at 933–35. Tesla claims that most Plaintiffs suffered no actual cognizable losses under the CFAA. The CFAA maintains a narrow conception of "loss," *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019), which includes "any reasonable cost" to "respond[ ] to an offense" or to return a system "to its condition prior to the offense." Section 1030(e)(11). Such costs can include those "incurred to repair a battery or otherwise remedy the alleged diminution in battery capacity" after software updates. *See Fish*, 2022 WL 1552137, at *8. Plaintiffs Smith, Manuel, Bomhof, and Bucklin paid to replace their batteries as a direct result of the software

7

updates, and thus plead a cognizable cost as aggregated over the relevant period. FAC ¶¶ 26–29, 32.

Plaintiffs Bui-Ford, Cao, Walker, Damji, Rumann, Schaefer, Meas, Ward, and Butler did not repair or replace their batteries. *Id.* ¶¶ 11, 13, 15, 17, 22–25, 31, 32. Allegations that Tesla deprived Plaintiffs of the value of their batteries, without more, cannot satisfy the "narrow conception of 'loss'" under the CFAA. *See Fish*, 2022 WL 1552137, at *8 (finding no cognizable loss because Plaintiffs failed to "allege[] that they incurred any costs to remedy Tesla's alleged improper access to their vehicles' battery systems."); *see also Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485–86 (N.D. Cal. 2021) (dismissing theories of loss premised on lost value). As such, they fail to allege cognizable loss under the CFAA.

Accordingly, the Court grants the motion and dismisses Bui-Ford, Cao, Walker, Damji, Rumann, Schaefer, Meas, Ward, and Butler's CFAA claims as to all prongs; Smith's claim may only go forward to the extent it relies on Section 1030(a)(5)(A).

### B. California Comprehensive Computer Data Access and Fraud Act (CDAFA), California Penal Code § 502

Plaintiffs bring their CDAFA claims under subsections (c)(3), (c)(4) and (c)(7), which establish liability for a defendant who:

> (3) Knowingly and without permission uses or causes to be used computer services;
>
> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network;
>
> . . . [or]
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code §§ 502(c)(3), (4), (7). Liability under Section 502(c) turns on an analysis of the specific "acts" that are alleged to constitute an offense and whether there was "permission" to engage in those acts. *Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at *12 (C.D. Cal. Aug. 7, 2018).

8

1    This analysis necessarily changes across the subsections at issue.  Under subsections (c)(3)
2    and (c)(7), "use" or "access" must be both knowing and without permission.  But under subsection
3    (c)(4), "without permission" does not modify "access" or "use" but instead modifies "adds, alters,
4    damages, deletes, or destroys any data, computer software, or computer programs."  The Court
5    highlights this distinction in the wake of the Ninth Circuit's holding in *State v. Christensen*, 828
6    F.3d 763, 789 (9th Cir. 2015), which clarified the requirements under subsection (c)(2) of the
7    CDAFA.  This subsection provides liability for "[k]nowingly access[ing] and without permission
8    tak[ing], cop[ying], or mak[ing] use of any data from a computer . . ."  According to the Ninth
9    Circuit, subsection (c)(2) merely requires knowing access and subsequent use of data on the
10   computer without permission; the court noted that this definition contrasted with Section
11   1030(a)(2) of the CFAA, which provides liability for "intentionally access[ing] a computer
12   without authorization."  *Id.*  Subsection (c)(4) of the CDAFA, which contains the same structure
13   as subsection (c)(2), similarly requires knowing access paired with alteration of computer data
14   without permission.  Contrary to Plaintiffs' assertions, the logic of *Christensen* does not extend to
15   subsections (c)(3) and (c)(7) to wholly remove the "without permission" requirement as it relates
16   to access.  Nor does *Christensen* displace case law requiring a defendant to "circumvent[]
17   technical or code based barriers" to access a computer "without permission" as to subsections
18   (c)(3) and (c)(7).  *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54  (N.D. Cal. 2014);
19   *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012).

20   Under subsections (c)(3) and (c)(7), Plaintiffs' claims fail because they do not plead that
21   Tesla overcame any technical or code-based barriers to access Plaintiffs' computers.  Under
22   subsection (c)(4), Tesla "knowingly access[ed]" Plaintiffs' car "computer system" by pushing out
23   and installing the software updates.  Tesla's updates "altered" the computer in a way that degraded
24   their car batteries, and Tesla did not inform them that installation of the updates would cause such
25   damage; as such, Plaintiffs did not consent to this alteration.  *See In re Apple Inc. Device
26   Performance Litig.*, 347 F. Supp. 3d 434, 454 (N.D. Cal. 2018).  Plaintiffs adequately plead that
27   Tesla acted without permission in "add[ing], alter[ing], damag[ing], delet[ing], or destroy[ing] any
28   data, computer software, or computer programs" in the Tesla car computer.

United States District Court
Northern District of California

1       Each Plaintiff must also allege that he or she experienced economic "damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1). Like the CFAA, the CDAFA allows an individual who "suffers damage or loss by reason of a violation" to state a claim. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014). The Court imports the loss requirements from the CFAA except as to the $5,000 requirement found in the CFAA. *See Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (analyzing CDAFA under CFAA's loss requirement); *see also Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) ("The CDAFA is California's state-law analogue to the CFAA"); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) (internal citations removed) ("While the CDAFA does not impose a minimum of $5,000 in damages, the rest of 'the necessary elements of [§] 502 do not differ materially from the necessary elements of the CFAA.'"). Here, only Plaintiffs Smith, Manuel, Bomhof, and Bucklin plead a cognizable "damage or loss" and thus plead violations of 502(c)(4).

      Tesla separately challenges the application of the CDAFA (as well as the UCL and California common law trespass to chattel claims) to the non-California Plaintiffs. But the presumption against the extraterritoriality of California law does not apply where the misconduct occurs in California. *In re iPhone 4S Consumer Litig.*, No. 12–cv–1127–CW, 2013 WL 3829653, at *7–8 (N.D. Cal. July 23, 2013); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 243 (2001) (California statutes apply to "non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."). Here, Plaintiffs allege that "at least some of the decisions behind the software updates and responses to the software updates were made at the [Tesla] engineering headquarters in Palo Alto, California" and provide supporting facts for that proposition. *See* FAC ¶¶ 36–40. *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("Plaintiffs have adequately alleged that [Defendants'] conduct occurred, if at all, in—or had strong connections to—California. Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California."). These facts are sufficient to establish jurisdiction for the CDAFA, UCL, and

10

California common law trespass claims as applied to the non-California Plaintiffs.

Accordingly, the Court grants the motion to dismiss as to Plaintiffs Bui-Ford, Walker, Damji, Cao, Meas, Rumman, Schaefer, Ward, and Butler's CDAFA claim.

### C. Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200

Plaintiffs seek injunctive relief under the UCL based on violations of the CFAA, CDAFA and California common law trespass. Specifically, Plaintiffs request injunctive relief "compelling Tesla to stop unilaterally updating software or modifying the performance of their vehicles without their consent." FAC ¶ 8.

Tesla argues that Plaintiffs cannot request injunctive relief because they have failed to establish that there is no adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). In response, Plaintiffs argue that their complaint "describe[s] Defendant's control over Plaintiffs' vehicles and the accompanying software, Defendant's software update that artificially reduces battery performance, the nature of the harms inflicted on Plaintiffs, the challenges Plaintiffs face in attempting to reverse or circumvent the software, and Defendant's refusal to acknowledge the problem or explain its cause." ECF No. 33 at 28. The Court understands that Plaintiffs oppose Tesla's conduct in pushing out updates that drain their batteries, and so want the Court to order Tesla to stop. But regardless of how Plaintiffs may feel about the conduct, the question is whether money damages would sufficiently compensate Plaintiffs for their injuries. As in other cases involving automotive defects, the answer is yes. *See, e.g., Goldstein v. Gen. Motors LLC*, No. 19CV1778-LL-AHG, 2022 WL 484995, at *4 (S.D. Cal. Feb. 16, 2022) (money damages adequate to compensate purchasers of automobiles whose in-vehicle infotainment devices ceased functioning normally).

A plaintiff may still seek injunctive relief under the UCL if monetary damages would not protect against an unquantifiable future harm. *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021); *Linton v. Axcess Fin. Servs., Inc.,* 2023 WL 4297568, at *3 (N.D. Cal. June 30, 2023); ("retrospective monetary damages will not prevent the future harm only remediable by an injunction"). But Plaintiffs' request for "an order temporarily and permanently enjoining Tesla from continuing unlawful, deceptive, fraudulent, and unfair business practices" does not meet that

11

standard. Just as past harms to the batteries are compensable with monetary damages, future harms to the battery through software updates should be equally quantifiable. Plaintiffs' conclusory allegation of Tesla's continuing practices in its plea for relief does not establish otherwise. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908–09 (N.D. Cal. 2021) (dismissing UCL claim for injunctive relief for vehicle repair or buyback because no facts showing "monetary damages would not provide nearly identical relief"); *TopDevz, LLC v. LinkedIn Corp.*, No. 20-CV-08324-SVK, 2021 WL 6113003, at *6 (N.D. Cal. Dec. 27, 2021) (finding no future harm "because it is not clear from the SAC that 'the alleged fraud is ongoing'"); *see also Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *3 (N.D. Cal. Mar. 29, 2022) (dismissing UCL claim for "declaratory relief and an injunction . . . [that] will trigger Defendant's obligations . . . to replace at its expense the defective parts and . . . safety recall" because damages are adequate).

The Court grants the motion to dismiss each Plaintiff's UCL claim.

### D.  California Trespass to Chattels

In California, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 455 (quoting *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 54 Cal.Rptr.2d 468, 473 (1996). The California Supreme Court has held that the principles underlying the tort apply to allegations of digital trespass. *See Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003). Thus, "[i]n order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citing *Thrifty-Tel, Inc.*, 54 Cal.Rptr.2d at 473). Like Plaintiffs' CFAA claim, the California trespass claim turns on whether Tesla acted "without authorization." *Parziale v. HP, Inc*, No. 5:19-CV-05363-EJD, 2020 WL 5798274, at *7 (N.D. Cal. Sept. 29, 2020). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*,

1  No. 12-CV-05160 WHA, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp.*
2  *v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)).

3  Tesla intentionally degraded Plaintiffs' car batteries without authorization through its
4  software updates.  All Plaintiffs except Cao therefore plausibly state intentional interference
5  without authorization.  *C.f. supra* Section III(A)(2).  All of these Plaintiffs but Cao also plead a
6  loss in the "condition, quality, or value" of their Tesla batteries given this alleged degradation.
7  FAC ¶¶ 10–17, 21–34.

8  The Court also rejects Tesla's contention that choice of law issues preclude this Court from
9  applying California trespass law to the non-California Plaintiffs.  As a general matter, conflict of
10 law issues should be settled at class certification because "choice of law analysis is a fact-specific
11 inquiry, which requires a more developed factual record than is available at the motion to dismiss
12 stage."  *Azar v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2017 WL 1479184, at *3
13 (S.D. Cal. Apr. 25, 2017); *see also Opperman*, 87 F. Supp. 3d at 1040–41 (denying motion to
14 dismiss based on argument that non-resident plaintiffs lacked standing to assert California
15 statutory claims); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012)
16 ("[c]ourts rarely undertake choice-of-law analysis to strike class claims at this early stage in
17 litigation"); *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 989 (S.D. Cal. 2022)
18 (citing cases).  Tesla nevertheless argues that because the trespass to chattel claims "materially
19 differ" across jurisdictions in terms of the elements, statute of limitations, claim accrual, and
20 cognizable damages, the Court should apply the government interest prong at this juncture.
21 Defendant "can only meet [its] burden by engaging in an analytically rigorous discussion of each
22 prong of California's 'governmental interests' test based on the facts and circumstances of this
23 case, and this [p]laintiff's allegations."  *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F.
24 Supp. 3d 937, 947 (C.D. Cal. 2015) (alterations in original).  Tesla's "cursory reference" to other
25 states' laws fails to demonstrate the relevance of these supposedly material differences in the
26 context of the facts alleged.  *Id.*; *Azar v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG),
27 2017 WL 1479184, at *3 (S.D. Cal. Apr. 25, 2017); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995
28 (9th Cir. 2010)) (defendant has burden to show there is an actual conflict based "on the facts of

this case").

The Court grants the motion to dismiss as to Plaintiff Cao's California trespass to chattels claim.

### E. Trespass to Chattel Claims Under Florida, Virginia, Michigan, Washington, Arizona, and Texas Law

Plaintiffs bring claims for common law trespass under the state laws of Florida, Virginia, Michigan, Washington, Arizona, and Texas. Tesla argues that each of these state trespass claims fail because some courts in these jurisdictions cite or favorably reference the Restatement (Second) of Torts as the source of law for trespass claims. The Restatement chapter on trespass requires either a "dispossession" or "intermeddling" for trespass of chattel claims, which in turn requires "physical contact" with the chattel. *See* Rest. 2d of Torts § 217; *id.* at Comment (e). Because physical contact is impossible in the case of cyber trespass, Tesla argues claims in states that rely on the Restatement must be dismissed. But Tesla's citation to some non-cyber trespass cases that cite favorably to the trespass chapter of the Restatement—which itself does not mention cyber trespass—does not require this Court to disallow such claims as a matter of law. For example, courts in Florida and Virginia have explicitly allowed cyber trespass claims. *See Klein v. Oved*, No. 9:22-CV-80160-KAM, 2022 WL 4772399, at *6 (S.D. Fla. Aug. 19, 2022) ("Without any word from Florida courts stating this [trespass to chattels involving cyberspace trespass] claim is not viable, however, the Court is inclined to let this count proceed."); *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 320 (E.D. Va. 2009) (allowing trespass to chattels claim when defendant accessed password-protected area of website without authorization). The Court is able to identify a clear prohibition on such cyber trespass claims only in Texas, so the Court dismisses only the Texas trespass claim as a matter of law. *See DHI Grp., Inc. v. Kent*, No. CV H-16-1670, 2017 WL 1088352, at *11 (S.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. CV H-16-1670, 2017 WL 1079184 (S.D. Tex. Mar. 22, 2017) (holding that trespass to chattel claim involving wrongful download and access of plaintiff's digital content cannot be maintained because it involves intangible property) (citing *In re Simons Broadcasting, LP*, No. W–11–CA–172, 2013 WL 9542015 (W.D. Tex. Nov. 19, 2013).

14

1  The Court grants the motion to dismiss as to Plaintiff Manuel and Ward's Texas trespass to chattel claim.

### F. Motion to Strike Class Allegations

Tesla moves to strike Plaintiffs' proposed class. Tesla argues that differences in class members' allegations defeat the proposed class. Tesla further argues that the proposed class consists primarily of class members who are subject to arbitration clauses, and because Plaintiffs are not subject to such clauses, they are atypical. But "[c]ourts in this district rarely grant motions to strike class allegations at the pleading stage on the ground that the claims at issue are not subject to certification under Rule 23." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 988 (N.D. Cal. 2014) (citing authorities); *in re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614–16 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification. . . . [T]he granting of motions to dismiss class allegations before discovery has commenced is rare."). The record now before the Court offers no reason to depart from its prevailing practice.

## CONCLUSION

For the foregoing reasons, the Court:

- dismisses Plaintiff Bui-Ford, Cao, Walker, Damji, Rumann, Schaefer, Meas, Ward, and Butler's CFAA claims with leave to amend; allows Smith's claim to proceed to the extent it relies on Section 1030(a)(5)(A), although the Court grants to leave to amend Smith's claim;

- denies the motion to dismiss the CFAA claims as to all other Plaintiffs;

- dismisses Plaintiffs Bui-Ford, Walker, Damji, Meas, Rumman, Schaefer, Ward, Cao and Butler's CDAFA claim with leave to amend, and denies the motion to dismiss the CDAFA claim as to all other Plaintiffs;

- dismisses Plaintiffs' UCL claim with leave to amend;

- dismisses Plaintiff Cao's California trespass to chattels claim with leave to amend, and denies the motion to dismiss the California trespass to chattels claim as to all other Plaintiffs;

- dismisses Plaintiff Manuel and Ward's Texas trespass to chattel claim with leave to amend;

- denies the motion to dismiss the Florida, Virginia, Michigan, Washington and Arizona trespass to chattel claims; and
- denies the motion to strike class allegations.

Plaintiffs may file an amended complaint within 21 days, solely to correct the deficiencies identified in this order. If no amended complaint is filed by that date, the claims dismissed in this order will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 20, 2024



JON S. TIGAR
United States District Judge